Mr. McCoy, on behalf of the Appellant, you may proceed. My name is Christopher McCoy, from the Office of the State Appellate Defender, and I represent Mr. Richard Manring. Your Honors, it's a basic principle of criminal defense that a jury should not hear evidence of the defendant invoking his right to silence or his right to an attorney. Yet, in this case, defense counsel failed to object to such evidence, not just one time, but to three specific instances of inadmissible evidence. Specifically, counsel failed to object to the defendant's post-arrest silence, his post-Miranda invocation of counsel, and his post-Miranda refusal to perform field sobriety tests. In the second case, the request for counsel, the State's attorney asks the question, what happened next? The police officer just responds, what happened next? What are we supposed to do about that? And what happened next was, he asked for an attorney, he didn't talk to us anymore. What's the prosecutor's responsibility there? Don't ask the question, or fix your witness, or whatever you're supposed to do. Our argument is not that the prosecutor did something wrong. Our argument is that defense counsel did something wrong. So in that case, what defense counsel should do is object and get that answer stricken from the record. Defense counsel didn't do that. She didn't object when that particular answer came out on direct, that it was again repeated on redirect. She didn't object again. And then what's even worse, counsel brought up again this invocation of counsel on cross and recross examination. So in four different instances where the defendant's invocation of counsel was mentioned, jury, there's not one single objection to any of those. We can argue that like post-arrest silence, invocation of counsel is a violation of due We'll have to ask the state if there's any legitimate strategic reason for failing to object. I am curious. But setting that aside for the moment, is the evidence closely balanced? If we were to find there's some kind of a problem here, if there was a clear, obvious violation, don't we have to look at whether the evidence was closely balanced? Yes. And if so, tell us why it was not. It was closely balanced. It was closely balanced. The important thing at the outset is to examine just how harmful this type of evidence is. And that's why I said it's a kind of textbook rule. The jury doesn't hear this. And it's because it is so harmful. It is so prejudicial. Because this is the type of evidence a lay person is going to really grab onto and put disproportionate weight on. Because the common way reaction is, well, only a guilty person asks for an attorney. Well, I think that's a fair characterization. But my question is then, don't we ultimately have to look, if we were to find or if it could be established that the evidence was overwhelming and not suggesting it is, that would enter into it as a consideration. Tell us why the evidence was closely balanced. Well, it's closely balanced on two points. It's closely balanced on the identification of the driver and intoxication. So on identification, no one sees the defendant drive the SUV. Anthony Bruneau is the only witness who sees the driver. He can't identify the defendant in court. And he gives a description that varies greatly from the defendant. He says the driver is heavyset, 5 foot 9 to 6 feet tall. The defendant is 5'4 and weighs 130 pounds. So that doesn't match. He says that the driver doesn't have facial hair. The defendant has distinctive facial hair. I thought he said he didn't notice whether the driver had facial hair. That's correct. He didn't see any. But the defendant did have facial hair. And also regarding identification, as defense counsel argued in closing, there's the possibility that Christopher Morgan was the driver that night. Is that the friend? Yes. Yes. The defendant's father testified that, well, it could be inferred from the defendant's father's testimony that Mr. Morgan picked up the defendant last night. Did you know what car they drove in? The defendant has a suspended license, so there would be a reason for him not to drive. And Mr. Morgan was so intoxicated, he couldn't remember anything that happened that night. So that is a possibility. That was presented to the jury. Of course, I mean, the car belonged to the defendant's girlfriend, not Mr. Morgan's girlfriend, correct? Correct. And the defendant's girlfriend lived out of town, and the car was being kept at the defendant's property, correct? Correct. And the defendant's driver's license or some credit card or something was found in the car, correct? Correct, which establishes that. And obviously he has some connection to the car, which would explain why some of his belongings would be in it. And obviously there's arguments on both sides of this question, but really essentially that's what we're asking. We're asking for the jury to decide to weigh those factors and decide where they came out without this extremely prejudicial evidence weighing in favor of the state. We're just asking for a fair trial on that question. Would it be fair to characterize the argument of the falseness? The case basically is essentially circumstantial evidence, isn't it? Exactly, exactly. And it's circumstantial evidence on whether the defendant was the driver, and even if he was the driver, it's circumstantial evidence on whether he was intoxicated at the time. He's not located until six hours after the accident. And then the uncontradicted testimony is that at that time he's not intoxicated. Now, he says he was drinking that evening, but there's no evidence how much he was drinking, no evidence if it was before or after the accident. And there was an accident, obviously, but accidents can and do occur when people aren't drinking. The testimony was it was a very dark intersection at 1 a.m. So the driver could have been on his phone, he could have been distracted, he could have been tired because of how late it was in the evening. There are multiple possibilities for the jury to consider that don't involve alcohol. And you indicated that, to my question, that the problem here isn't what the prosecutor did, it's what the defense attorney didn't do. But then you said to Justice Hudson that the real problem is that the jury heard it. Well, even if the defense attorney had objected and asked for an appropriate instruction, the jury still would have heard it. How do we, you know, we have a police officer who just is answering a question. How do we deal with that? I mean, it's when somebody asks you a question you should answer what happened next. Well, the defense counsel has to do something. And we presume the jury follows instructions. So if the defense attorney had made the objection, judge sustains that objection, tells the jury not to consider that evidence, the law is we presume the jury follows that instruction. And obviously if the objection is sustained, it doesn't get mentioned three other times through this witness. But here there was no opportunity for a curative instruction because the defense counsel never asked for the curative instruction. Exactly, exactly. You're asking us to expand Eagan to post-Miranda refusal of field sobriety testing, correct? Yes. And what's your basis for that? Well, it's essentially we have the same case as Eagan, except Eagan involves a drug test, this involves field sobriety tests. In both cases you have a post-Miranda refusal, which is, as Eagan found, akin to silence. And that's just too ambiguous. Eagan found no Fourth Amendment violation or implication, no Fifth Amendment implication, correct? Correct. And that's the same thing. And the issue is a prejudice, well, it's a weighing, balancing test, prejudice versus probative value. And Eagan relied on the fact that the State was not obligated to prove that the defendant ingested drugs to prove the possession. But in a DUI, certainly the State's obligated to prove that the person's intoxicated, which the field sobriety tests go directly to. That is true. But what in both cases, the refusal was argued as consciousness of guilt. So it's not argued on the specific elements. But even on the elements, the court in Eagan found that if the defendant failed the drug test, it would make it more likely that he possessed the drug. So there was some limited probative value. Here, whatever, the field sobriety test would have also some limited probative value. But it, again, is limited. It's six hours after the accident. It's uncontradictive. The defendant is not intoxicated at that time. So what's the prejudice? I mean, the evidence is clear. The officer testified he wasn't intoxicated. There was evidence he gave a breath test that didn't come in. But the inference is that, I mean, so what's the problem with the refusal? Well, the State thought it was important. The State thought it certainly helped its case. They argued it in closing as consciousness of guilt evidence. And it's really building up all three of these together in that it just keeps building on the jury's impression of the defendant as someone who doesn't cooperate, who must be guilty because he lawyered up. He refused to take the field sobriety test. He didn't make a statement in the squad car. All of this kind of gets to that common sense impression of, you know, I'm not going to worry for a juror. I'm not going to worry about all these problems, all these weaknesses with the State's case. I'm just going to convict the defendant because he invoked his constitutional rights. If the only issue here was the failure to take the field sobriety test after Miranda and then the argument that that is consciousness of guilt, would it be the same? Would we have the same argument here? Or is this an argument that relates more to the first, did he make any statements in the car? No, he was quiet. Does it build up as a cumulative, the issue you're driving at here? Or would an extension of Egan to this case still be reversible? It would still be reversible. Obviously, were we both cumulative effect and particularly the second and the third instances by themselves would be reversible as well. And, you know, the fact is why it is reversible goes back to it being very prejudicial evidence and closely balanced evidence in this case. At the suppression hearing, the trial judge said that there were weaknesses in the State's case and the State knows they've got some work ahead of it. This is not how one would describe a case where there's overwhelming evidence. So the jury could have just overlooked those problems because they were so overwhelmed with this, the prejudicial evidence in this case. Unless there are any further questions, Mr. Manory requests that this court reverse its convictions and remain the case for this trial. Thank you very much, Mr. McCoy. Good morning, Your Honors.  The brief indicates that the State's attorney in Boone County is Tricia Smith, and that's true. It's Tricia Smith, and that's correct. In 012, Tricia Smith was not the State's attorney. Was she? I think that was Michelle Currier or someone before her. I could not tell you yet. I just don't know. Thank you. Sorry. I guess we disagree with defense because we think this is a very strong circumstantial case, and when you take that with reasonable inferences, I think it's clear the defendant was guilty here. No, we would agree. Hopefully the clear precedent indicates that commenting on the defendant's right to remain silent, postural silence, commenting on an invocation of counsel is improper. We can agree on that, correct? Or are you saying that's okay? No, I'm not saying that's okay. Now, he didn't say anything in the car. I don't know if that was really that prejudicial. Certainly an invocation of counsel was not the right thing to do, and that's a great honesty. Let me ask you the point in question that I think this whole case was well done on. Articulate to us a sound strategic reason why defense counsel wouldn't object. Give us a sound strategic reason why defense counsel wouldn't object. I cannot give you that. I'd be more interested in why the state, a good sound strategic reason why the state would ask questions that go in this direction. I mean, that first question about the squad car, did he make any statements? What happened in the squad? Did he make any statements? He's asking for trouble. I agree, Your Honor, and I can't give you any good reason for that either. But I think the defendant was not prejudiced because of the strong case we have as far as the evidence. We have an eyewitness who witnessed the accident, filed the card, called the police, gave the plate number, filed the defendant all the way into what, Baltimore's auto shop. He saw him. He didn't see him well. There was only one light. It was a dark night. That's all true, but he couldn't identify him in court, correct? Well, that's correct, but also that was later. And the fact is the description he gave was a description that the officer who picked him up said that was the person. He had shorts on. He was wearing, I think it was a dark T-shirt. He was soaking wet. His clothes were disheveled. This was someone who was probably hiding. His arms were all scratched up. He smelled of alcohol. He had red, glassy eyes. So maybe somebody was coming out of a bar and it was raining out. Well, there was no bars around that area. He was a mile and a half north of where he dropped the car off when he was picked up by the officer, and the witness said that guy, he looked at him and, you know, kind of in a gaze or, you know, and then he jogged off towards the north. So it was the same direction. Now, even more importantly, he said, well, was he drinking that? Well, there was a half a bottle of Heineken found in the console of the Explorer. They found two full bottles of Heineken in the back seat. He left his wallet. Well, there's evidence of intoxication, assuming that he was the driver. And, you know, this case has another twist that I think sort of allures candidates to the defense benefit. As I'm reading the facts, reading the record, I see, oh, the officer opened the door, he's going to file the registration, and it's going to be registered to the defendant. Not somebody else. Right. So we don't know who really is driving that night, do we? Well, of course we do. We have the defendant's wallet with a Social Security card. It could have been a passenger, right? Well, there was no passenger. The witness saw only one person. No one else got out of the car and ran. It was this one officer or this one defendant who got out and ran. We had, you know, his Social Security card, his wallet, his phone, his debit card, his bills and envelopes with his names on it. We have evidence that he wasn't going to cooperate because he knew he was guilty. Pardon me? And we have evidence three times, plus argument, that we knew he didn't cooperate because, of course, he knew he was guilty. And that's the argument. Well, the argument is, and I agree with the first two. The second one, I think, the field sobriety test, I think there's now it's around the balance I have. There's a statute. There's some cases that you can use that to show consciousness of guilt. It's not really that important and prejudicial to him anyway because he was sober at the time. So he could have taken it. Was that introduced? Well, I think the other officer did say, yeah, he wasn't intoxicated at the time I brought him in. But you can use those field sobriety tests as consciousness of guilt. But, you know, we have these strong circumstantial circumstances and, you know, reasonable inferences. It was raining like heck. This guy was soaking wet. He's walking in the middle of the country off on a road just raining. Why else would he be out there? I mean, we can't and the jury can't leave their common sense, you know, at the door. Common sense is this. And I think most people agree here. This is somebody who is driving, trying to escape, knew he was in trouble. He was so drunk it took him six hours to get a mile and a half from where he was before. He might have been hiding. We don't know for sure. But certainly this is the person. Well, that's a description, though, of the defendant, the perpetrator who ran from the vehicle, sort of weighing the defense in favor. As I recall, didn't the person say he was between the witness between 5'9 and 6 feet? And it turns out it was 5'4. He has clearly facial hair and no teeth. And the witness doesn't notice any facial hair. Doesn't that raise questions about the validity of the identification? Well, I would say most witnesses, you know, eyewitnesses, it can vary. It was very dark at the time. But he did get the thing that he was concentrating on. It was the shorts, the dark shirt. The fact that he, you know, talked about that and what this guy was wearing and which way he went was just as important. If not more important, it certainly was enough for the officer to pick this person up. Why did he have a white shirt on at the time of the booking photo? The Boone County or the Belvedere Police Department shirt? I don't know if that was explained in the record. I think they probably changed it. But he was wearing a dark shirt when he was. There is testimony there. But that's a question I didn't think about. It's a good question. I'm sure the police wanted to get him into something. More comfortable. More comfortable, right. They didn't want him to catch cold. And then we finally have, you know, he looks at his phone. He finds that Chris Morgan, you know, he had called him a couple of times that night. His father said, told the police, well, yeah, he was, you know, he was going to go out with Chris Morgan. Well, Chris Morgan obviously is not going to say anything. He said, you know, I was too drunk. But, again, there's another connection there that he was out driving. He was out drinking with Chris Morgan. And this offense happened. And I think given. What's Chris Morgan's description? His description? Yes. I'm sorry, Your Honor. At the time, I don't think they gave a description of Chris Morgan. He had a goatee or anything? Whether he was five, nine, or six feet tall? Yeah. But, you know, if you have a dark goatee in here, it's dark out. You may not be able to see that. As far as height, I found people have a lot of trouble with height. They think I'm a lot taller than I am. And so, you know, I just don't know. You have to look at that. And the jury, that was for the jury to weigh. But I think they found certainly that there was sufficient evidence, even with the mistakes that defense counsel made, that this person was guilty beyond a real reasonable doubt. Any other questions, Your Honor? So Chris Morgan didn't testify, did he? Yeah, he did testify. But he said he was too drunk. He doesn't remember anything from the night. So his testimony was virtually a wash. All right. Thank you, Your Honor. Thank you, Your Honor. First, before you may address the Court in rebuttal. Counsel argues that the refusal of the field sobriety test was not very prejudicial. It didn't really show consciousness of guilt. Well, that's the exact opposite argument that the State made in the Court below. The State and the trial court thought it was prejudicial because they specifically introduced it. They specifically argued it in closing argument as consciousness of guilt. So the State has switched on this on how important this refusal is. So if someone refuses to take a breath test, is that the same thing? In terms of prejudice? In terms of applying eager to that. Well, the breath test obviously comes with the warning to motorists. So in that case, the defendant has different expectations. He's told that there are different consequences of what could occur if he refuses the breath test. There's not any equivalent when you're dealing with field sobriety tests. Counsel also mentions Grinnell's description, this witness's description of the driver. Counsel focused on the fact that he said he had shorts. Well, Grinnell really vacillated on whether or not the driver had shorts or long pants. He goes back and forth. He's not sure what he sees on that. And in terms of the dark shirt, the State never explained what happened to this dark shirt or how it came about that the defendant is wearing a white shirt in the booking photo. It's the State's burden, and it's simply insufficient evidence on this point. It's another factor for the jury to consider of whether or not Mr. Manning was actually the driver. Did the judge also testify that that person matched the description? That's why he stopped him? He did. But, again, when we look at what the description actually was and what Mr. Manning actually was, especially in terms of height and weight, they don't match. And height can be tough to guess, but you're not going to say someone is 6 foot tall when they're really 5 foot 4. And the driver was standing next to the SUV, so Grinnell did have some type of frame of reference to determine height by. What was the color of the shirt that the witness observed? Did he give a description? He said it was a dark shirt. Besides the shorts. He got the shorts right. Well, I apologize. I can't remember if Grinnell was, or excuse me, if the defendant was wearing shorts at the time of his arrest. I do remember on cross-examination that there was some confusion. Grinnell said, well, it might have been shorts. It might have been longer pants. He really wasn't sure on that point. But, again, the description was so off. And because the case is entirely circumstantial, the jury needed to not be influenced by this extremely prejudicial inference. And this extremely prejudicial evidence, which the state concedes there's no reasonable strategy for the defense to bring it down. So, therefore, again, we would just ask for the convictions to be reversed and the case remanded for a new trial. All right. Thank you very much, Mr. McCoy. All right. We'd like to thank both counsel for the quality of the arguments here this morning. The matter will, of course, be taken under advisement and a written decision will issue. In due course, we will stand in recess.